```
              UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF NEW HAMPSHIRE
```

**Christina Margaret Porter,**
**Deceased, by Brent M. Porter**
**and Mary M. Salstrom, as**
**Administrators of her Estate**
**and Individually**

    **v.**　　　　　　　　　　　　　　Civil No. 07-cv-28-PB
　　　　　　　　　　　　　　　　　　Opinion No. 2007 DNH 131

**Dartmouth College and**
**John/Jane Doe Defendants 1-10**


### MEMORANDUM AND ORDER

Christina Porter died from injuries she suffered while participating in an introductory ski class at Dartmouth College. Her parents have sued Dartmouth for negligence and wrongful death. Dartmouth has moved to dismiss, contending that plaintiffs' claims are barred by the New Hampshire Skiers, Ski Area, and Passenger Tramway Safety Act ("Ski Statute"), N.H. Rev. Stat. Ann. § 225-A. Because I conclude that plaintiffs' claims are not precluded by the Ski Statute, I deny Dartmouth's motion to dismiss.

## I. BACKGROUND[1]

Porter was a 20-year-old undergraduate student at Dartmouth College ("Dartmouth") when she enrolled in Dartmouth's physical education introductory ski class for the Spring 2004 semester. The ski class was held at the Dartmouth Skiway in Lyme, New Hampshire, a facility that is owned, operated, and maintained by Dartmouth College. Porter was an inexperienced beginner skier, taking the class to fulfill Dartmouth's three-credit physical education requirement for all undergraduates. Her ski instructors were aware of Porter's inexperience.

On February 3, 2004, the ski instructors told Porter to ski down a trail alone, while the instructors accompanied the rest of the class down another more difficult trail. Porter followed instructions and skied down the trail alone and unsupervised. Before reaching the bottom, she struck a tree and suffered numerous catastrophic injuries including skull and arm fractures, pleural effusion, heart compromise, and brain injury. As a result of the accident, Porter became a paraplegic and died from

---

[1] I draw the background facts from the Complaint and describe them in the light most favorable to the plaintiffs.

her injuries almost a year later.

Plaintiffs filed this action on February 2, 2007, just before the expiration of the New Hampshire three year statute of limitations for personal actions.  See N.H. Rev. Stat. Ann. § 508:4 (2000).

## II.   STANDARD OF REVIEW

On a Rule 12(b)(6) motion to dismiss, the court must accept a plaintiff's well-pleaded factual allegations as true, and the plaintiff is entitled to all reasonable inferences from the facts alleged in the complaint.  Fed. R. Civ. P. 12(b)(6); Phoung Luc v. Wyndham Mgmt. Corp., 496 F.3d 85, 88 (1st Cir. 2007).  Because I am reviewing state law claims, I will apply New Hampshire state substantive law and adhere to interpretations of New Hampshire law by the New Hampshire Supreme Court.  Phoung Luc, 496 F.3d at 88.

## III.   ANALYSIS

The Ski Statute both imposes safety standards on the State's ski industry, N.H. Rev. Stat. Ann. §§ 225-A:3-a (establishing tramway safety board), 225-A:23 (requiring

-3-

operators to implement trail marking system), and bars claims against ski area operators that result from the inherent risks of skiing, N.H. Rev. Stat. Ann. § 225-A:24.[2] The statute also establishes a special two-year statute of limitations for certain claims by skiers against ski area operators. N.H. Rev. Stat. Ann. § 225-A:25 IV. Dartmouth argues that the Ski Statute bars plaintiffs' claims both because Porter's injuries resulted from risks inherent in the sport of skiing and because her claims are subject to the statute's special two-year statute of limitations. I find neither argument persuasive.

The Ski Statute states that "[e]ach skier and passenger shall have the sole responsibility for knowing the range of his own ability to negotiate any slope, trail or passenger tramway." N.H. Rev. Stat. Ann. § 225-A:24 II. It also mandates that "[e]ach skier or passenger shall conduct himself within the limits of his own ability, maintain control of his speed and course at all times while skiing, heed all posted warnings and refrain from acting in a manner which may cause or contribute to

---

[2] The Ski Statute was amended in 2005. I refer in this Memorandum and Order to the version that was in effect in 2004 when Porter was injured.

the injury of himself or others." N.H. Rev. Stat. Ann. § 225-A:24 III. Further, it provides that "[e]ach person who participates in the sport of skiing accepts as a matter of law the dangers inherent in the sport, and to that extent may not maintain an action against the operator for any injuries which result from such inherent risks, dangers, or hazards." N.H. Rev. Stat. Ann. § 225-A:24 I. The statute goes on to identify certain categories of risks that are deemed to be inherent in the sport of skiing by stating that "[t]he categories of such risks . . . include but are not limited to the following: variations in terrain, surface or subsurface snow or ice conditions; bare spots; rocks, trees, stumps and other forms of forest growth or debris; lift towers and components thereof (all of the foregoing whether above or below snow surface); pole lines and plainly marked or visible snow making equipment; collisions with other skiers or other persons or with any of the categories included in this paragraph." Id.

　　　Dartmouth argues that Porter's claims are necessarily barred by § 225-A:24 because she was injured after she skied off the trail and struck a tree. This argument is plainly wrong. Porter alleges that her injuries were caused by the negligence of her

instructors rather than trail conditions that all skiers face when they take to the slopes.  While the Ski Statute identifies the risk of striking a tree as a risk inherent in the sport of skiing, it is silent on the subject of negligent instruction.  If a skier hires a ski area operator to provide specialized instruction, she is entitled to assume that her instructors will exercise reasonable care in assessing her abilities and in providing guidance and supervision during the period of instruction.  There is no good reason why negligent instruction should be deemed to be an inherent risk of skiing.

The New Hampshire Supreme Court determined in <u>Adie v. Temple Mountain Ski Area</u>, 108 N.H. 480, 483-84 (1968), that an earlier version of the Ski Statute did not bar negligent instruction claims.  In reaching this conclusion, the court reasoned that "[i]f the Legislature had intended to bar skiers from actions against an operator for negligent instruction or negligent rental of defective equipment, some regulation of their operations in these areas would have appeared in the statute."  <u>Id.</u>  Although the Ski Statute has been amended several times since the supreme court's pronouncement in <u>Adie</u>, the legislature has failed to amend the statute to expressly bar claims by skiers based on

either negligent instruction or the negligent rental of defective equipment.  Its failure to do so is dispositive of Dartmouth's argument that Porter's negligence instruction claims are barred by § 225-A:24.

Dartmouth argues in the alternative that Porter's claims are barred by the Ski Statute's special two-year statute of limitations.  Section 225-A:25 IV provides in pertinent part that "[n]o action shall be maintained against any operator for injuries to any skier or passenger unless the same is commenced within 2 years from the time of injury . . . ."  While this language could be construed broadly to apply to all claims by skiers against ski area operators, the New Hampshire Supreme Court in Adie construed an indistinguishable predecessor statute of limitations to apply only to claims that depend upon the Ski Statute for their existence.  Adie, 108 N.H. at 483-84.  Porter's claims are not based on the breach of a duty imposed on ski area operators by the Ski Statute.  Accordingly, her claims are  not subject to the statute's special statute of limitations.[3]

---

[3] Dartmouth also seeks to have plaintiffs' wrongful death claim dismissed because Porter was not a minor at the time of her death.  I find no support for this argument in supreme court precedent, which recognizes that the parents of an adult child

## IV.  CONCLUSION

For the reasons stated above, defendant's motion to dismiss (Doc. No. 7) is denied.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

October 24, 2007

cc:  K. William Clauson, Esq.
Angela Collison, Esq.
Kevin Murphy, Esq.
Charles J. Raubicheck, Esq.
Danielle L. Pacik, Esq.

---

can maintain a wrongful death claim on behalf of their child's estate.  See Merrill v. Great Bay Disposal Serv., 125 N.H. 540, 542 (1984).  Although plaintiffs cannot recover damages for loss of familial relationship, see § 556:12 III (limiting claims for loss of familial relationship to cases where decedent was a minor), they are not otherwise barred from proceeding with their wrongful death claim.