```
              UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF NEW HAMPSHIRE
```

**Christina Margaret Porter,**
**Deceased, by Brent M. Porter**
**and Mary M. Salstrom, as**
**Administrators of her Estate**
**and Individually**

    **v.**                                              Case No. 07-cv-28-PB
                                                                          Opinion No. 2009 DNH 145

**Dartmouth College and**
**John/Jane Doe Defendants 1-10**


**MEMORANDUM AND ORDER**

    Christina Porter died from injuries that she suffered while participating in an introductory ski class to fulfill her physical education requirement at Dartmouth College.  Porter's parents have sued Dartmouth College for negligence and wrongful death.  Dartmouth has moved for summary judgment based upon an Equipment Rental and Liability Release Agreement("Release Agreement") that Porter signed prior to her accident, contending that the Release Agreement relieves Dartmouth College from any and all liability.  I deny Dartmouth's motion for summary judgment for the reasons set forth below.

## I.   BACKGROUND

Porter, a Twenty-year-old undergraduate student at Dartmouth College ("Dartmouth"), enrolled in Dartmouth's introductory ski class for the Spring 2004 semester to fulfill her physical education requirement.  (Compl., Doc. No. 1, ¶ 13.)  The ski class was conducted at the Dartmouth Skiway in Lyme, New Hampshire, a facility that is owned, operated, and maintained by Dartmouth.  (Id. ¶ 14.)

### A.   The Accident

On February 3, 2004, Porter was participating in the ski class at Dartmouth Skiway when her instructors allowed her to ski down a particular slope, apart from her classmates.  Porter obeyed their instructions and proceeded down the slope, without supervision, while the instructors accompanied the remainder of the class down a more difficult trail.  (Compl., Doc. No. 1, ¶¶ 18-22.)  Porter skied off the trail on her way down the slope, resulting in catastrophic injuries that included multiple skull fractures, an arm fracture, and traumatic brain injury.  (Id. ¶ 28.)  As a result of her injuries, Porter died on January 16, 2005. (Id. ¶¶ 29-30.)

Porter's estate filed this action on February 2, 2007, asserting claims for negligence and wrongful death.  On October 24, 2007, I denied Dartmouth's motion to dismiss and ruled that the New Hampshire ski area operator statute does not bar Plaintiffs' claims.  Porter ex. rel. Porter v. Dartmouth College, No. 07-cv-28-PB, 2007 WL 3124623 (D.N.H. Oct. 24, 2007).

**B.   The Liability Release Agreement**

Dartmouth students who were enrolled in the Spring 2004 ski class were able to rent ski equipment, including skis, poles, and boots.  Approximately 80% of the students enrolled in the ski class rented ski equipment.  (Def.'s Mot. for Summ. J., Doc. No. 44-2, at 2.)  Each student who rented equipment was required to complete and sign an Equipment Rental and Liability Release Agreement ("Release Agreement") before receiving her equipment and participating in the ski class.  (Id.)

The Release Agreement is a one page form drafted by Solomon, the manufacturer of the bindings attached to the renting student's skis. (Id.; Pls.' Mem. of Law in Opp'n, Doc. No. 54-2, at 2.)  The form is divided into three sections, each separately outlined by a black border.  The first section, appearing at the top half of the page beneath the Solomon logo, asks the equipment

renter to provide her contact information, as well as her height, weight, and age, to ensure that she receives the appropriate equipment sizes.  (See Def.'s Mot. for Summ. J., Doc. No. 44-2, at 3.)  This first section also asks the renter to classify her "Skier Type" by checking one of five available boxes in the upper right hand corner of the form. (See Pls.' Mem. of Law in Opp'n App. Equipment Rental Agreement, Doc. No. 54-2, at A1.)  The renter is provided with an informational chart to assist her in classifying her Skier Type according to her preferences for speed, terrain, and level of binding retention. (Id. at A2.)  A signature line at the bottom of the section asks the renter to certify that the provided information is accurate, and acknowledge that she will refrain from using the equipment until she fully understands its use and function.  (Id. at A1.) Porter's signature appears on the "Equipment User's Signature" line on the Release Agreement submitted by the parties.  (See id.)

   The second section of the Release Agreement, appearing beneath the renter's signature line, allows the equipment technician to record the model and sizing specifications of the equipment, the price of the equipment, and the toe and heel

binding settings.  An illegible signature appears on the "Technician's Signature" line in the Release Agreement submitted by the parties. (See id.)

The third and final section of the Release Agreement, occupying the lower half of the page, is comprised of seven paragraphs of text beneath the heading of "Equipment Rental & Liability Release Agreement," followed by a signature line.  (See id.; Def.'s Mot. for Summ. J., Doc. No. 44-2, at 3.)  The first two paragraphs acknowledge that the equipment renter accepts the equipment "as is," assumes financial responsibility for the equipment for the duration of the rental period, and understands that the binding system may not guarantee the renter's safety. The fourth paragraph affirms that the renter understands that a helmet may further reduce the risk of injury.  (See Pls.' Mem. of Law in Opp'n App. Equipment Rental Agreement, Doc. No. 54-2, at A1.) At issue here are paragraphs three, five, and six of this third section, which state:

[3]  I understand that the sports of skiing, snowboarding, snowshoeing, and other sports (collectively "RECREATIONAL SPORTS") involve inherent and other risks of INJURY and DEATH.  I voluntarily agree to expressly assume all risks of injury or death that may result from these RECREATIONAL SNOW SPORTS, or which relate in any way to the use of this equipment.

[5]  I AGREE TO RELEASE AND HOLD HARMLESS the equipment rental facility, its employees, affiliates, agents, officers, directors, and the equipment manufacturers and distributors and their successors in interest (collectively "PROVIDERS"), from all liability for injury, death, property loss and damage which results from the equipment user's participation in the RECREATIONAL SNOW SPORTS for which the equipment is provided, or which is related in any way to the use of this equipment, including all liability which results from *NEGLIGENCE* of PROVIDERS, or any other person or cause.

[6]  I further agree to defend and indemnify PROVIDERS for any loss or damage, including any that results from claims or lawsuits for personal injury, death, and  property loss and damage related in any way to the use of this equipment.

(Id. (emphasis in original); Def.'s Mot. for Summ. J., Doc. No. 44-2, at 3.)  Dartmouth cites these paragraphs in its Motion for Summary Judgment, arguing that the Release Agreement, signed by Porter, is a valid and enforceable exculpatory contract that relieves Dartmouth of any and all liability.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate when "the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A party seeking summary judgment must first identify the absence of a genuine issue of material fact.  Celotex Corp. v.

Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996); see Celotex, 477 U.S. at 323.

### III. ANALYSIS

New Hampshire law generally prohibits exculpatory contracts, including liability releases of the kind that Porter signed. See Barnes v. New Hampshire Karting Ass'n, 128 N.H. 102, 106-07 (1986). Such contracts will be enforced, however, where (1) they do not violate public policy, (2) the plaintiff understood the import of the agreement or a reasonable person would have understood the import of the agreement, and (3) the plaintiff's claims were within the contemplation of the parties when they executed the contract. Dean v. MacDonald, 147 N.H. 263, 266-67 (2001) (quoting Barnes, 128 N.H. at 107).

To determine whether a release meets prongs two and three of this three-part test, New Hampshire courts examine whether the release identifies with sufficient clarity the specific parties being released as well as the types of claims that the agreement

covers.  See Barnes, 128 N.H. at 107.  A release's terms are strictly construed against the defendant, who must show that the contract "clearly state[s] that the defendant is not responsible for the consequences of his negligence" and demonstrate that the plaintiff's claims were "within the contemplation of the parties at the time of the execution of the agreement."  Id.  A release agreement will be upheld only if its language "*clearly* and *specifically* indicates the intent to release the defendant[] from liability for personal injury caused by the defendant[]'s negligence."  McGrath v. SNH Development, Inc., 158 N.H. 540, 545 (2009) (emphasis added) (citing Dean 147 N.H. at 267).

Dartmouth argues that the Release Agreement that Porter signed when she rented her ski equipment bars Porter's claims under New Hampshire law.  Plaintiffs counter, however, that the release fails to state with sufficient clarity (1) that Dartmouth was a party to the contract and is therefore released from liability, and (2) that the release contemplated claims arising from Dartmouth's educational ski class.[1]

---

[1] Because I determine that the Release Agreement does not meet the exacting clarity standard outlined by the New Hampshire Supreme Court, I need not consider whether a special relationship existed between Porter and Dartmouth that renders the Release Agreement unenforceable as a matter of public policy.  See Barnes, 128 N.H. at 107.

### A. The Release Agreement Does Not State with Sufficient Clarity that Dartmouth Is a Party to the Contract

An exculpatory contract need not specifically identify the defendant by name. See Dean, 147 N.H. at 270. However, the contract must at least provide a functional identification of the parties being released. See id. The Release Agreement that Porter signed neither specifically identifies Dartmouth by name nor functions to place the equipment renter on notice that she is relieving Dartmouth, and not merely Solomon, of liability.[2]

---

[2] Dartmouth mistakenly relies upon Brush v. Jiminy Peak to support its position. 626 F. Supp. 2d 139 (D. Mass. 2009). While the facts in Brush bear some resemblance to those in the present case, the release signed by the plaintiff in that case stands in marked contrast to the Release Agreement signed by Porter. Brush, a student on the Middlebury College ski team, suffered severe injuries while participating in a collegiate ski race hosted by Williams College at Jiminy Peak. In that case, the court held that a United States Ski and Snowboard Association (USSA) release barred the plaintiff's claims against her coach, race officials, and competing colleges. The court was careful to note, however, that the liability waiver "defined USSA quite expansively to encompass a host of individuals and groups including affiliates, volunteers, competition organizers, sponsors, coaches and representatives. It is clear that the list was meant to encompass anyone involved in running a competition sanctioned by the USSA." Id. at 151. It was also "undisputed" that the plaintiff knew that the Williams-hosted event was sanctioned by the USSA, and that the liability waiver therefore applied. Id. The Release Agreement that Porter signed, on the other hand, includes no definition of "equipment rental facility" whatsoever. (See Pls.' Mem. of Law in Opp'n App. Equipment Rental Agreement, Doc. No. 54-2, at A1.) Porter and her classmates, as novice skiers, would also have been less likely to understand the import of a liability release agreement, in contrast to an

-9-

The Release Agreement appears to be nothing more than a standard form agreement created by Solomon.  The "Solomon" name and logo appear prominently in the upper left hand corner of the Release Agreement in large, capital letters, indicating that the form was clearly intended to release the equipment manufacturer, and not Dartmouth, from liability.  Applying the Barnes standard to the form's contents, neither Porter nor a reasonable person in Porter's position would interpret the Release Agreement to be anything more than the standard equipment manufacturer liability release that all skiers are required to sign before rental equipment is issued, whether at a public ski resort or at Dartmouth Skiway.  See Barnes, 128 N.H. at 107.  The title "*Equipment Rental* & Liability Release Agreement" appears in bold, capital letters above the text of the Release Agreement's substantive provisions, and the Release Agreement specifies that the recipient accepts the "*equipment*" as is, understands that the "*binding system*" cannot be guaranteed, and specifically releases the "*equipment rental* facility, its employees, owners,

---

experienced ski team member like Brush.
    Furthermore, the court's determination in Brush rested upon Colorado law, not New Hampshire law.  There is no indication that even the release in Brush would relieve the defendants of liability under the exacting New Hampshire Barnes standard that must be applied here.

-10-

affiliates, agents, officers, directors and the *equipment manufacturers and distributors* and their successors in interest (collectively 'PROVIDERS')." (Pls.' Mem. of Law in Opp'n App. Equipment Rental Agreement, Doc. No. 54-2, at A1) (emphasis added). The term "equipment" appears thirteen times throughout the Release Agreement. (See id.; Pls.' Reply Mem. of Law in Opp'n, Doc. No. 65, at 3.) This repeated emphasis on ski equipment, with no mention of Dartmouth College, its affiliates, or the Dartmouth Skiway facility, fails to place the equipment renter on even functional notice that Dartmouth was in any way a party to the Release Agreement.

Dartmouth nevertheless argues that it and its employees are clearly released from liability because they qualify as "PROVIDERS" under the Release Agreement. See Def.'s Mot. for Summ. J., Doc. No. 44-2, at 11.) To be released from liability, Dartmouth must demonstrate that it is clearly a "PROVIDER[]" as that term is read within the context of the entire Release Agreement. See Wright v. Loon Mountain Recreation Corp., 140 N.H. 166, 170 (1995) (holding that an exculpatory phrase did not relieve the defendant tour company of liability for a tour guide's negligence when read within the context of the provisions in the preceding paragraphs).

The term "PROVIDERS" is defined in paragraph five of the Equipment Rental & Liability Release Agreement as "the equipment rental facility, its employees, owners, affiliates, agents, officers, directors, and the equipment manufacturers and distributors and their successors in interest." (Pls.' Mem. of Law in Opp'n App. Equipment Rental Agreement, Doc. No. 54-2, at A1.) Dartmouth asserts in its Reply Memorandum that "there is no entity, other than Dartmouth, that can reasonably be considered the 'equipment rental facility.'" (Def.'s Reply Mem. in Supp. of Mot. for Summ. J., Doc. No. 56, at 4.) However, Dartmouth provides absolutely no support for this proposition. Without such support, I cannot conclude that a reasonable person in Porter's position would have understood that Dartmouth, rather than some other entity with whom Dartmouth had contracted, was the equipment rental facility.

**B.   The Release Agreement Does Not Insulate Dartmouth from Liability for Claims Arising from Ski Instruction**

Even if Dartmouth was clearly and specifically identified by name as a party to the Release Agreement, the Release Agreement does not apply to the type of negligence claims asserted here. New Hampshire law requires that a release call *particular* attention to the type of negligence claims that are being

released.  See Audley v. Melton, 138 N.H. 416, 419 (1994).  In Audley, an exculpatory contract relieved a photographer and his studio "of any or all liability" associated with working with wild animals.  Id. at 417.  The New Hampshire Supreme Court held, however, that while the agreement insulated the defendant photographer from liability for injuries inflicted by *wild animals*, it failed to clearly state that the defendant was relieved of liability for the consequences of *his own* negligence.  Id. at 419; McGrath, 158 N.H. at 547.  Thus, the agreement did not release the photographer from liability for his failure to take any precautionary action when he noticed that the plaintiff's hair was agitating a lion during a photo shoot.  See Audley, 138 N.H. 416; see also Gonzalez v. Univ. Sys. of N.H., No. 451217, 2005 Conn. Super. LEXIS 288, at *46 (Conn. Super. Ct. Jan. 28, 2005)(finding that a liability release agreement failed to release defendants, a state college and University System, from liability where the agreement could be interpreted as releasing cheerleading club members, other third parties, or the plaintiff herself).

   The language in the Release Agreement that Porter signed similarly fails to relieve Dartmouth of liability for the consequences of its ski instructors' negligence.  Although the

-13-

Release Agreement relieves "PROVIDERS" from "all liability for injury, death, property loss and damage which results from the equipment user's participation in the RECREATIONAL SNOW SPORTS for which the equipment is provided," the Release Agreement fails to call any particular attention to the notion of releasing "PROVIDERS" from liability for negligent ski instruction. (See Pls.' Mem. of Law in Opp'n App. Equipment Rental Agreement, Doc. No. 54-2, at A1.) Nowhere in the Release Agreement do the words "instruction," "lesson," or "physical education" appear, nor does any other term extend the scope of the Release Agreement to the educational or instructional setting. The Release Agreement therefore fails to "clearly state" that Dartmouth is released from liability for negligence claims arising out of its educational ski class, and a reasonable person would not understand the Release Agreement to relieve Dartmouth of liability in any educational or instructional context. See Barnes, 128 N.H. at 107.[3]

---

[3] Dartmouth's extensive reliance upon Checket v. Tuthill Corporation is misplaced. No. 99-1819, 2001 Pa. Dist. & Cnty. LEXIS 460 (Pa. County Ct. 2001), aff'd, 797 A.2d 368 (Pa. Super. Ct. 2002). Dartmouth attempts to draw parallels between the language in the Release Agreement that Porter signed and the language in the release upheld by the court in Checket to bolster its argument that the Release Agreement is both an equipment rental agreement and a liability release agreement. Even if the

-14-

While the language of the release in <u>Audley</u> failed to relieve the defendant of liability because it was too general, a release's language may also fail because it is too specific, i.e., where certain classes of claims are released against specific parties but the terms in the release fail to encompass the claims at issue. See <u>Wright</u>, 140 N.H. at 171. In <u>Wright</u>, the court concluded that a reasonable person might understand an exculpatory clause's language to relate to the inherent dangers of horseback riding and liability for injuries that occur for that reason, but *not* to harm that results from a tour guide's failure to use reasonable care when handling his horse. <u>McGrath</u>, 158 N.H. at 546 (citing <u>Wright</u>, 140 N.H. at 170). Here, a reasonable person would likely interpret the Release Agreement as limiting liability only with respect to claims that arise in the

---

Release Agreement at issue here does release other parties from certain types of negligence claims, there is no clear indication that Dartmouth is such a party, that the agreement is intended to release negligent instruction claims, or that the Release Agreement extends beyond the recreational snow sports context to encompass negligence claims arising from educational ski instruction. Furthermore, the agreement in <u>Checket</u> specifically and clearly asserted, in capital letters, that defendant "BLUE MOUNTAIN SKI AREA" was released from liability. In contrast, the Release Agreement that Porter signed fails to identify Dartmouth College, Dartmouth Skiway, or its affiliates or employees as parties to the Release Agreement. (<u>See</u> Pls.' Mem. of Law in Opp'n App. Equipment Rental Agreement, Doc. No. 54-2, at A1.)

-15-

*recreational* setting, not where education or instruction is being provided. The term "RECREATIONAL SNOW SPORTS" appears in bold, capital letters four times in the Release Agreement, indicating that the form was drafted by Solomon to release it from liability for equipment-related accidents occurring at public ski areas, not to insulate Dartmouth from negligence claims arising from its educational ski class. (<u>See</u> Pls.' Mem. of Law in Opp'n App. Equipment Rental Agreement, Doc. No. 54-2, at A1; Pls.' Reply Mem. of Law in Opp'n, Doc. No. 65, at 3.)

Furthermore, as Dartmouth itself acknowledges, only those students who rented ski equipment were required to sign the Release Agreement. (<u>See</u> Def.'s Mot. for Summ. J., Doc. No. 44-2, at 2-3.) If the Release Agreement was intended to relieve Dartmouth of liability for the negligent acts of its ski instructors, and not merely to insulate the ski manufacturer and rental facility from claims pertaining to the rental of ski equipment, surely *all* students would have been required to sign a liability release. Indeed, Dartmouth had secured waivers from *all* students enrolled in other physical education classes that expressly released Dartmouth from liability. (<u>See</u> Pls.' Mem. of Law in Opp'n, Doc. No. 54-2, at 3-4.) Had Dartmouth sought to immunize itself from all liability arising from its educational

ski class, it could have drafted such a waiver, and it could have required all students, not merely those who rented ski equipment, to sign it.

## IV. CONCLUSION

For the foregoing reasons, I deny Dartmouth's motion for summary judgment (Doc. No. 44).

SO ORDERED.

>     /s/Paul Barbadoro
>     Paul Barbadoro
>     United States District Judge

September 30, 2009

cc:  Bradford T. Atwood, Esq.
     K. William Clauson, Esq.
     Kevin Murphy, Esq.
     Matthew R. Johnson, Esq.
     Thomas B.S. Quarles, Jr., Esq.
     Charles J. Raubicheck, Esq.