UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Christina M. Porter, Deceased,
by Brent M. Porter and Mary M.
Salstrom, As Administrators of      Civil No. 07-cv-28-JL
Her Estate and Individually         Opinion No. 2010 DNH 008

          v.

Dartmouth College, et al.


**OPINION AND ORDER**

The question before the court is whether this wrongful death
case must be dismissed because the plaintiffs, who brought suit
three years ago claiming to be the administrators of their
daughter's estate, were not actually appointed as administrators
until six months ago, after the statute of limitations expired.
The defendant, Dartmouth College, has moved to dismiss for lack
of standing, see Fed. R. Civ. P. 12(b)(6), arguing that timely
appointment is required for an administrator to maintain a
wrongful death action under New Hampshire law.  The plaintiffs
argue that they cured their good-faith mistake by ultimately
becoming administrators and that their case should not be
dismissed on a "technicality."

This court has subject-matter jurisdiction under 28 U.S.C.
§ 1332(a)(1) (diversity).  After oral argument, Dartmouth's
motion is denied.  Although the plaintiffs may not have strictly
complied with the wrongful death and survival statute, see N.H.
Rev. Stat. §§ 556:9 et seq., the New Hampshire Supreme Court has

"given [the statute] a liberal interpretation, so as to fully protect the rights of those interested in the estate." <u>Owen v. Owen</u>, 109 N.H. 534, 536 (1969) (quoting <u>Halle v. Cavanaugh</u>, 79 N.H. 418, 420 (1920)).  This court, applying New Hampshire law, must do the same.  The relevant case law from the New Hampshire Supreme Court suggests that the plaintiffs should be allowed to proceed to trial now that they have been appointed as administrators of their daughter's estate.

## I.  <u>Applicable legal standard</u>

For purposes of ruling on Dartmouth's motion to dismiss, this court must accept the plaintiffs' well-pleaded facts as true and must draw all reasonable inferences in their favor.  <u>Phoung Luc v. Wyndham Mgmt. Corp.</u>, 496 F.3d 85, 88 (1st Cir. 2007). Because the motion challenges the plaintiffs' capacity to maintain suit on behalf of their daughter's estate, it is governed by "the law of the state where the court is located." Fed. R. Civ. P. 17(b)(3); <u>see also</u> <u>Martel v. Stafford</u>, 992 F.2d 1244 (1st Cir. 1993) (applying forum state's law in determining administrator's capacity).  In applying New Hampshire law, this court is "bound by the teachings of the state's highest court." <u>Phoung Luc</u>, 496 F.3d at 88.  To the extent that the New Hampshire Supreme Court "has not definitively weighed in," this court "may consider analogous decisions, considered dicta," and other

reliable sources in making an "informed prophecy" about how that court would resolve the issue. <u>Janney Montgomery Scott LLC v. Tobin</u>, 571 F.3d 162, 164 (1st Cir. 2009).[1]

## II.  **Background**

Christina Porter, a sophomore at Dartmouth College, suffered catastrophic injuries while participating in the school's introductory ski class at the Dartmouth Skiway on February 3, 2004.  After nearly a year of medical care, she ultimately died from the injuries on January 16, 2005.  At the time of her death, she was 21 years old with no spouse, no children, no siblings, no will, and no tangible assets other than her portfolio of artwork from grade school to college.  Her closest living relatives were her parents, plaintiffs Brent Porter and Mary Salstrom.

---

[1]The plaintiffs also try to invoke federal law by moving to supplement their complaint with a paragraph describing their appointment as administrators, <u>see</u> Fed. R. Civ. P. 15(d), and then arguing that the paragraph relates back to the time of filing under Fed. R. Civ. P. 15(c).  It is true that "Rule 15(c) applies in a diversity case notwithstanding the incidence of a more restrictive state rule."  <u>Morel v. DaimlerChrysler AG</u>, 565 F.3d 20, 25 (1st Cir. 2009).  But if state law is less restrictive, then it automatically controls.  <u>See</u> <u>id.</u> at 26. Because New Hampshire law applies by virtue of Rule 17(b)(3) and allows this case to go forward, <u>see</u> infra Part III, this court need not conduct a separate analysis under Rule 15(c).  The plaintiffs' motion for leave to file an amended/supplemented complaint, <u>see</u> document no. 95, will be resolved in due course after briefing has been completed.

The plaintiffs filed this lawsuit against Dartmouth on February 2, 2007, just before the three-year anniversary of their daughter's accident.  They asserted claims for wrongful death and negligence under New Hampshire law, both individually and as purported administrators of their daughter's estate.  Dartmouth initially moved to dismiss the case as barred by the New Hampshire Ski Statute.  See N.H. Rev. Stat. § 225-A:24 (giving ski area operators limited immunity against personal injury claims that result from the inherent risks of skiing).  The court denied the motion, but noted that because their daughter was an adult, the plaintiffs could not maintain individual claims for loss of consortium.  See Porter v. Dartmouth Coll., 2007 DNH 131, 7-8 n.3 (Barbadoro, D.J.).

Two years into the case, with discovery still underway, Dartmouth asked the plaintiffs for a copy of their estate administration papers, which it needed to obtain confidential medical records from their daughter's medical providers.  In attempting to satisfy that request, plaintiffs' counsel learned in May 2009 that neither the plaintiffs nor anyone else had ever sought appointment as administrators of their daughter's estate. The plaintiffs mistakenly believed that, as surviving parents, they became administrators automatically when their daughter died without a will.[2]

---

[2]Both plaintiffs have filed affidavits regarding their mistaken belief.  At oral argument, plaintiffs' counsel took

Hoping to rectify this good-faith mistake, the plaintiffs immediately began the process of seeking appointment as administrators from the probate court in Kings County (Brooklyn), New York, where they and their daughter resided at the time of her death.  In the meantime, Dartmouth moved to dismiss this case for lack of standing.  Two weeks later, on July 21, 2009, the plaintiffs finally obtained letters of administration from the probate court.

As briefing continued on the motion to dismiss, the court denied Dartmouth's previously submitted motions for summary judgment, leaving the case on track for a February 2010 trial. See Porter v. Dartmouth Coll., 2009 DNH 145 (Barbadoro, D.J.) (denying summary judgment motion relating to liability release agreement); margin order dated Aug. 19, 2009 (Barbadoro, D.J.) (denying summary judgment motion relating to standard of care). The case was then reassigned to this chambers after Judge Barbadoro recused himself.

---

responsibility for the mistake, admitting--as officers of the court, see N.H. R. Prof. Conduct 3.3; L.R. 83.5, DR-1--that they failed to ask the plaintiffs for letters of administration or to check with the probate court.  They denied having any intent to mislead Dartmouth or this court.  Dartmouth has not identified, nor can this court conceive of, any plausible reason why the plaintiffs would have intentionally misrepresented their status. This court therefore finds that the plaintiffs acted in good faith.

III.  **Analysis**

     This court must decide whether the plaintiffs have standing
to continue litigating their claims under New Hampshire's
wrongful death and survival statute, N.H. Rev. Stat. §§ 556:9 et
seq.  Dartmouth argues that the plaintiffs lack standing because
they were not appointed as administrators of their daughter's
estate within the statute of limitations and they failed to
satisfy the statutory requirements for someone other than an
administrator to maintain such an action.  The plaintiffs argue,
in response, that they made a good-faith mistake, which has since
been cured by their appointment as administrators, and that their
case should not be dismissed on a "technicality."  After
analyzing (A) the statutory framework and (B) the relevant case
law, this court (C) concludes that the plaintiffs have standing
and may proceed to trial.


A.  *The statutory framework*

     New Hampshire's wrongful death and survival statute provides
that "the administrator of the deceased party" may bring a
wrongful death action as plaintiff on behalf of the estate.  N.H.
Rev. Stat. § 556:12.  Like most personal actions under New
Hampshire law, a wrongful death action "may be brought only
within three years of the act or omission complained of."

<u>Cheever v. S. N.H. Reg'l Med. Ctr.</u>, 141 N.H. 589, 590 (1997)

(quoting N.H. Rev. Stat. § 508:4, which applies to wrongful death

cases by virtue of N.H. Rev. Stat. § 556:11).[3]  If not filed in a

timely manner, the action is forever barred.  <u>See</u> <u>Heath v.</u>

<u>Cleveland</u>, 104 N.H. 451, 453 (1963) (citing <u>Poff v. New Eng. Tel.</u>

<u>& Tel. Co.</u>, 72 N.H. 164, 165 (1903)).

The statute also allows other interested persons to file a

wrongful death action and then seek the administrator's approval:

> Any person interested in the estate of a person
> deceased may begin an action as administrator, which
> shall not be abated nor the attachment lost because
> such person is not administrator, nor by his decease,
> if the administrator then or afterward appointed shall,
> at the first or second term of the court, indorse the
> writ and prosecute it as plaintiff.

N.H. Rev. Stat. § 556:19.  Unchanged since 1842, this provision

is an exception to the "general rule" that an "administrator is

the only proper party to bring or defend actions relating to the

personal estate of the deceased."  <u>Scamman v. Sondheim</u>, 97 N.H.

280, 281 (1952).

The plaintiffs have not strictly complied with the statute

in this case.  They did bring suit within the three-year

limitations period, claiming to be the administrators of their

daughter's estate.  At the time, however, they had not sought

appointment as administrators and thus were not authorized to

---

[3]The plaintiffs argue that the applicable statute of
limitations should be six years, not three years.  But the New
Hampshire Supreme Court expressly rejected that argument in
<u>Cheever</u>, 141 N.H. at 591-92.

bring suit in that capacity.  They were merely interested persons, authorized to "begin an action" under § 556:19 but then required to get the administrator's approval within "the first or second term of the court."[4]  They later became the administrators and endorsed the action, but not within two terms of court, nor within the statute of limitations.[5]

The New Hampshire Supreme Court, though, has not always required strict compliance with the statute.  To the contrary, it has "given [§ 556:19] a liberal interpretation, so as to fully protect the rights of those interested in the estate."  <u>Owen</u>, 109 N.H. at 536 (quoting <u>Halle</u>, 79 N.H. at 420).  Whether this court agrees or disagrees with that approach to statutory interpretation is irrelevant.  On issues of New Hampshire law, this court's "task is to ascertain the rule the state court would most likely follow under the circumstances, even if [this court's] independent judgment on the question might differ."

---

[4]New Hampshire law provides for at least two terms of court annually.  <u>See</u> N.H. Rev. Stat. § 496:1(II).  Both parties agree, and this court assumes for purposes of analysis, that the statute's antiquated reference to "the first or second term of the court" therefore means within at least one year of when the suit is filed.  <u>See</u> <u>Merrill v. Woodbury</u>, 61 N.H. 504, 504 (1881) (measuring the two court terms from when "the action was brought").

[5]The plaintiffs argue that, notwithstanding the statute of limitations, administrators may bring an action at any time within one year of the original grant of administration under N.H. Rev. Stat. § 556:7.  But that provision "does not apply to actions for personal injuries or wrongful death."  <u>Perutsakos v. Tarmey</u>, 107 N.H. 51, 52 (1966); <u>see also</u> N.H. Rev. Stat. § 556:9.

Rodriquez v. Suzuki Motor Corp., 570 F.3d 402, 406 (1st Cir. 2009) (quotation omitted).  As explained below, the case law indicates that the New Hampshire Supreme Court would allow the plaintiffs to maintain their wrongful death case under these circumstances, notwithstanding their failure to comply strictly with the statute.

**B.   *The case law***

The New Hampshire Supreme Court has wrestled with the meaning of § 556:19 in four key cases spanning more than a century:  Merrill v. Woodbury, 61 N.H. 504 (1881), Tanner v. King, 102 N.H. 401 (1960), Owen, 109 N.H. at 536, and Canty v. Hopkins, 146 N.H. 151 (2001).  While none of the cases is exactly like this one, they all involve similar issues and thus offer some insight into how the state supreme court would resolve the issue here.

In the first case, Merrill, the administrator refused to endorse the plaintiff's action to collect a debt belonging to her husband's estate.  The New Hampshire Supreme Court initially felt compelled to dismiss the case:

> It is not a matter of discretion whether the suit shall abate or not.  Without the [wrongful death] statute the suit could not have been brought as it was; and as no person, legally representing the deceased, appeared within the time fixed by the statute, and the administrator declines to appear, there is no plaintiff in court, and the action cannot be maintained.

61 N.H. at 505.

During the next court term, however, the Merrill plaintiff moved for leave to amend her complaint by inserting the administrator's name as plaintiff and indemnifying him against any litigation costs.  Id.  To prevent "a serious hardship and a grave injustice," the New Hampshire Supreme Court changed its mind and allowed the case to go forward:

> Having in good faith undertaken to collect a claim belonging to her husband's estate, in which she has an interest, a compulsory abandonment of the suit may leave her without other redress . . . .  The defendant cannot complain if he is put to his defence on the merits by a trial of this action, which will conclude the rights of all parties.

Id.

In the second case, Tanner, no administrator was ever appointed.  The New Hampshire Supreme Court had to decide whether the decedent's husband, as an interested person, "can prosecute [the case] to a conclusion in that capacity or must it be prosecuted by an administrator."  102 N.H. at 402.  The court decided that the case could not go forward because "the Legislature intended that actions to recover damages for wrongful death were to be handled by an administrator accountable to the probate court" in order to "insure[] an orderly procedure in the prosecution of the action and a supervised payment of claims and distribution of the proceeds."  Id. at 403; see also Hebert v. Hebert, 120 N.H. 369, 370 (1980) ("[I]n Tanner, we held that only

the administrator may maintain an action under the survival statute."). The New Hampshire Supreme Court later called <u>Tanner</u> a case where even "a liberal interpretation of the statute could not save the day." <u>Owen</u>, 109 N.H. at 536.

In the third case, <u>Owen</u>, the plaintiff brought suit as a voluntary administrator of his wife's estate, not a regular administrator appointed by the probate court. <u>Id.</u> at 535. At the time, New Hampshire law allowed a spouse to become the voluntary administrator of a small estate (consisting entirely of personal property not exceeding $1500) by filing an affidavit with the probate court, rather than having to petition for formal letters of administration.[6] <u>Id.</u> (citing N.H. Rev. Stat. § 553:31, 1961 N.H. Laws ch. 108, <u>repealed by</u> 2005 N.H. Laws ch. 252). The plaintiff's wrongful death action technically exceeded his authority as a voluntary administrator. At oral argument, though, the plaintiff informed the supreme court that he recently had been appointed as regular administrator and sought leave to amend the complaint to that effect.

Although the time for administrator endorsement had already passed under § 556:19 and the statute of limitations had also

---

[6]The position of voluntary administrator did not exist when § 556:9 was originally enacted.

expired,[7] the New Hampshire Supreme Court decided that the case could go forward:

> [T]he action for wrongful death was instituted by an administrator, even though he was a voluntary administrator rather than a regular administrator.  A voluntary administrator ought to be allowed to turn over to a regular administrator any rights or assets without jeopardy or abatement and this is what the statute contemplates.  In this jurisdiction . . . 'pleading is considered only a means to an end.  The end is accomplished if counsel can understand the dispute and the court can decide the controversy on its merits.'  This approach to the problem of abatement is applicable to wrongful death actions.

Id. at 537 (quoting Morency v. Plourde, 96 N.H. 344, 346 (1950), and citing 1961 N.H. Laws ch. 108).

In the fourth case, Canty, the plaintiff brought suit as the administrator of his father's estate after the probate court removed him from that position for failing to fulfill his administrative duties.  The probate court replaced him with a special administrator, who declined to endorse the suit.  The New Hampshire Supreme Court held that, by virtue of his prior removal from the administrator position, "the plaintiff lacked standing to bring any claims as administrator of his father's estate." 146 N.H. at 154.

_____

[7]While Owen does not expressly discuss the statute of limitations, it indicates that the plaintiff became regular administrator more than two years after his wife's death.  At that time, the applicable limitations period was two years.  See Heath, 104 N.H. at 453 (citing N.H. Rev. Stat. § 556:11, 1887 N.H. Laws ch. 71, since replaced by 1983 N.H. Laws ch. 177).

C.  *Application to this case*

    This case is much closer to Owen than to any of the other
New Hampshire Supreme Court cases applying § 556:19.  As in Owen,
the plaintiffs have now become administrators of their daughter's
estate and have endorsed the case in that capacity.  It is true
that, as Dartmouth stresses, neither the appointment nor the
endorsement happened within "the first or second terms of the
court" under § 556:19, or within the three-year statute of
limitations.  But the same was true in Owen.  There, too, the
plaintiff brought suit within the statute of limitations, but was
not appointed as administrator until after two court terms and
the limitations period expired.  Nevertheless, the New Hampshire
Supreme Court allowed his case to go forward.  While not directly
controlling here, Owen strongly suggests that this case should be
allowed to proceed to trial as well.

    Dartmouth argues that Owen is distinguishable because the
plaintiff there was already an administrator (albeit a voluntary
one, not a court-appointed one) when he filed suit.  Indeed, that
is the reason why Owen is not directly controlling.  But the
distinction is not nearly as significant as Dartmouth suggests.
As a voluntary administrator, the Owen plaintiff had only limited
authority to administer a small estate consisting entirely of
personal property; he did not have authority to bring the
wrongful death action.  See In re Estate of Magoon, 109 N.H. 211,

213 (1968) (ruling that the appointment of a voluntary administrator had "no effect with respect to property of the deceased not administrable in that form").  Thus, for purposes of that action, the Owen plaintiff was in more or less the same position as the plaintiffs here:  he was the most logical and likely choice to represent the estate, but technically lacked authority to do so until later appointed as regular administrator.

By the same token, this case is meaningfully distinguishable from the other three New Hampshire Supreme Court cases, none of which had the support of an administrator (even a late-appointed one).  In one of them, Tanner, no administrator was ever appointed; the plaintiff sought to litigate the case to completion as merely an interested person.  Here, in contrast, the plaintiffs have been authorized to represent their daughter's estate and seek to complete the case in that capacity.[8]  The policy goals that Tanner attributed to § 556:19--i.e., accountability to the probate court, orderly prosecution, and supervised distribution of proceeds--can all be achieved in this

_____

[8]Dartmouth argues that this case is effectively the same as Tanner because no administrator had been appointed when it filed the motion to dismiss.  In other words, Dartmouth argues that the plaintiffs' post-motion appointment is irrelevant to the analysis.  But Owen suggests otherwise.  There, the plaintiff did not announce his appointment as regular administrator until the appellate oral argument, but the New Hampshire Supreme Court still considered it.

posture.  See Owen, 109 N.H. at 536 (distinguishing Tanner due to
the lack of an administrator).

In the other two cases, Merrill and Canty, the administrator
affirmatively refused to support the plaintiff, meaning that the
case went against the express wishes of the estate's appointed
representative.  No such conflict exists in this case.  The
plaintiffs were the first and only administrators appointed for
their daughter's estate.  Unlike in Merrill and Canty, there is
no risk here that the estate will incur unnecessary and unwanted
litigation expenses, or that Dartmouth will face duplicative
litigation.  See Owen, 109 N.H. at 536 (distinguishing Merrill
due to the administrator's opposition).

Moreover, the New Hampshire Supreme Court ultimately allowed
the Merrill plaintiff to go forward with her case anyway, in
order to prevent "grave injustice" and "serious hardship."  61
N.H. at 505.  The opinion emphasized that she had acted "in good
faith," had no "other redress than the precarious chance of
charging the administrator," and had given the defendant adequate
notice of the dispute.  Id.  The same is true here.  The
plaintiffs have acted in good faith and have no other means of
seeking redress for their daughter's untimely death, except
perhaps the precarious chance of suing their own attorneys for
not advising them to open the estate earlier.  Even more so than
in Merrill, it would be a "grave injustice" and a "serious

15

hardship" to dismiss their case now that they have been appointed as administrators.

Like the defendants in <u>Merrill</u> and <u>Owen</u>, Dartmouth "cannot complain if [it] is put to [its] defence on the merits by a trial of this action, which will conclude the rights of all parties." <u>Merrill</u>, 61 N.H. at 505.  The plaintiffs filed this suit three years ago, within the statute of limitations, and thus gave Dartmouth ample--and timely--notice of their claims.  The parties have conducted extensive discovery, and Dartmouth has twice moved for summary judgment.  All along, both parties proceeded under the assumption that the plaintiffs were authorized to represent their daughter's estate--and now they are.  Their good-faith mistake has been cured, the substance of the case remains unchanged, and Dartmouth has not suffered any prejudice.[9]

Dismissing the case under these circumstances would be a stricter application of § 556:19 than the New Hampshire Supreme Court has ever condoned.  Moreover, it would be inconsistent with "the mode of analysis which the Court has employed in [recent wrongful death] decisions," which "has evinced a greater solicitude for the substantive right to the redress of actionable personal injuries which the statute provides."  8 Richard B.

---

[9]Dartmouth argued in its motion that the plaintiffs' late appointment as administrators prejudiced its efforts to obtain their daughter's medical records.  At oral argument, however, Dartmouth acknowledged that it now has all of the records and that they turned out to be of little significance.

McNamara, New Hampshire Practice, § 10:02 (3d ed. 2003).  The New Hampshire Supreme Court has expressed a strong preference for reaching decisions on the merits, not only in wrongful death cases but also in its broader jurisprudence.  See, e.g., Roberts v. Gen. Motors Corp., 140 N.H. 723, 728-29 (1996) ("our State has a different legal tradition than other States" and "make[s] every effort to reach a judgment on the merits, to achieve the ends of justice unobstructed by imaginary barriers of form"); In re Proposed N.H. R. Civ. Pro., 139 N.H. 512, 516 (1995) (calling it "practically impossible to lose an action because of a 'procedural technicality'" in New Hampshire); Morency, 96 N.H. at 346 ("in no state is pleading treated more liberally and regarded as less of a game than in this jurisdiction").

It is worth noting that the "great majority of cases" in other states have allowed wrongful death cases to go forward where the plaintiff files suit within the statute of limitations but is not appointed as administrator until after the limitations period has expired.  J.F. Rydstrom, Running of statute of limitations as affected by doctrine of relation back of appointment of administrator, 3 A.L.R. 3d 1234, § 3[a] (1965 & supp.) (citing cases, which apply various theories depending on the state's law); see also Wozniak v. United States, 701 F. Supp. 259, 261 (D. Mass. 1988).  If the court were to rule otherwise here, it would have the perverse effect of treating New Hampshire

17

as one of the strictest states in this area, when it strives to
be the most lenient.  This would not be the "informed prophecy"
required of a federal court applying state law.  <u>Janney
Montgomery Scott</u>, 571 F.3d at 164.

Dartmouth argues that New Hampshire would reject the
majority view because, unlike most states, it regards timely
filing and timely administrator appointment as "conditions
precedent" that, if not satisfied, extinguish any right to relief
under the wrongful death statute.  <u>See</u> <u>Gen. Motors Corp. v.
Arnett</u>, 418 N.E.2d 546, 549 (Ind. Ct. App. 1981) (distinguishing
the majority view on that basis).  Whatever validity this
"condition precedent" argument may have, <u>see</u> <u>Heath</u>, 104 N.H. at
453; <u>but see</u> <u>New Hampshire v. Preston</u>, 119 N.H. 877, 880 (1979),
the New Hampshire Supreme Court did not view it as a barrier in
<u>Owen</u> and <u>Merrill</u>.  In fact, <u>Owen</u> characterized the timing of
administrator appointment as a "pleading" issue that should be
"considered only a means to an end."  109 N.H. at 537 (quoting
<u>Morency</u>, 96 N.H. at 346).  According to <u>Owen</u>, that "end is
accomplished if counsel can understand the dispute and the court
can decide the controversy on its merits."  <u>Id.</u>  In this case,
there is no question that the parties, their counsel, and the
court all fully understand the dispute.  As in <u>Owen</u> and <u>Merrill</u>,
the controversy here can be decided on the merits.

18

## IV.   **Conclusion**

For the reasons set forth above, this court concludes that the plaintiffs have standing to maintain their wrongful death case as the appointed administrators of their daughter's estate. Dartmouth's motion to dismiss for lack of standing[10] is therefore DENIED.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:      January 12, 2010

cc:         Charles J. Raubicheck, Esq.
            Julie Kurzrok, Esq.
            K. William Clauson, Esq.
            Kevin Murphy, Esq.
            Bradford T. Atwood, Esq.
            Matthew R. Johnson, Esq.
            Thomas B.S. Quarles, Jr., Esq.

---

[10]Document no. 67.

19